173 F.Supp. 29 (1959)
GOVERNMENT OF PAKISTAN, MINISTRY OF FOOD AND AGRICULTURE, Libelant,
v.
THE S.S. IONIAN TRADER, her engines, boilers, tackle, etc., Compania De Navegacion Cristobal, S.A., General Steamship Corporation, Ltd. and Simpson, Spence & Young, Respondents.
United States District Court S. D. New York.
May 12, 1959.
Hill, Rivkins, Middleton, Louis & Warburton, New York City, for libelant, J. Edwin Carey, Alan S. Loesberg, New York City, of counsel.
Hill, Betts & Nash, New York City, for respondents, James E. Freehill, Robert H. Peterson, New York City, of counsel.
THOMAS F. MURPHY, District Judge.
This libel is for damages to a cargo of wheat owned by the Government of Pakistan and shipped on the Ionian Trader from Tacoma, Washington, to Karachi, Pakistan. Upon discharge it was found partially damaged by sea water. *30 The libel was filed six days before the expiration of the one-year statute of limitations in the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(b).
On the eve of trial the underwriters moved to intervene and be substituted as libelants and to amend the libel accordingly. Such motion was opposed on the ground that at the time of the signing of the settlement subrogation agreement the Government of Pakistan deleted the provisions authorizing suit in its name. In opposing the intervention and substitution it was argued that the proctors for the original libelant had started suit without authority and if intervention and substitution were permitted the statute of limitations would be applicable. We permitted the intervention and amendment and allowed respondents to plead as additional defenses the defense of non-authority and the statute of limitations.
On the merits there was little or no dispute. The bill of lading was clean and it was agreed that upon discharge of the cargo at its destination it was partially damaged. The principal litigated issue was whether or no the defense of perils of the sea had been convincingly established. We find as a fact that the Ionian Trader suffered considerable damage to its superstructure by reason of heavy weather it encountered in the latter part of December 1952 in the Northern Pacific at latitude 44°. However, we are not convinced despite the deposition of the master and one seaman that all the damages detailed in the smooth log were in fact sustained, but even if true it is damage that could reasonably be expected at that time of year in that ocean at that latitude. In addition the ship, although leaving from a summer zone, was below its accepted marks for winter zone travel. This despite the expert testimony that because of the consumption of oil and water its bow would have been raised somewhat.
On all the evidence we find that the weather experienced was not so catastrophic as to be classified as giving the shipowner an exemption since whatever the weather experienced it was to be expected by reasonably skillful navigators and seamen. We find, too, that the unseamanlike stowage of the cargo on the boat deck and the faulty securing of the extra ladder on the railing on the boat deck was the proximate cause of the #4 hatch covers being broken, thus permitting the entry of sea water into the cargo. Accordingly, there should be a decree for the damage sustained but for the problem of whether the statute of limitations is applicable.
It is the underwriters contention that the policies of insurance by their very terms authorized suit in the name of the owner of the cargo, in this case the Government of Pakistan. It was admitted on the trial that no specific authority, written or oral, was received from the Government of Pakistan by the proctors who filed the libel. The only authority claimed is the authority contained in the policies under The Institute Cargo Clauses which provides in part:
"It is further agreed that the assured shall with all diligence bring and prosecute under the direction and control of the Underwriters such suit or other proceedings to enforce the liability of the carrier or bailee as the Underwriters shall require and the Underwriters agree to pay such proportion of the costs and expenses of any such suit or proceedings as attach to the amount under the policy."
To bring into focus this issue and the correlative one of the statute of limitations it is necessary to review further facts. This libel was filed on February 16, 1954, in the name of the Pakistan Government as consignee of the cargo. The one-year statute of limitations expired on February 22, 1954. Unless the above quoted clause in the insurance contracts gave the underwriters some interest in the claim or authorized them to institute suit in the assured's name, the Government of Pakistan at that point of time was the only party in interest. *31 On February 26, 1954, the Government of Pakistan, by its agent, signed the Settlement Agreement proffered by the underwriters but deleted an integral part and added two words, "We agree." This is the agreement:
 "Lloyd's
 Settlement of Claims Abroad
 To the Underwriters
 of the goods mentioned below
 Vessel SS "Ionian Trader" 
 Voyage Tacoma, Washington to Karachi, Pakistan
 Insured Value of Goods $609,473.35 part of $1,030,090.00
 Amount of Loss $4617.27 
 Policy No. --------
 
 Certificate No. C51/785404 
 Lloyd's Agents having settled and purchased from us a claim for Partial
 Loss on the under-mentioned goods it is understood and admitted that upon
 payment of that claim you will be subrogated (as and to the extent provided
 by the law of England) to all our rights and remedies in and in
 respect of the said goods and will be authorized to make use of our name
 for the purpose of any proceedings or measure, legal or other which you
 may think fit to take for the enforcement of such rights or remedies and
 accordingly we undertake to furnish you with all documents and correspondence
 relating thereto, and to make any such affidavits or declarations
 and to give any such oral evidence as we can properly make or give
 We agree
 and/generally to render you such assistance as you may from time to time
 reasonably require in connection with any such proceedings or measures
 you indemnifying us against all liability costs charges and expenses incurred
 on your behalf in connection therewith and with the use of our
 name.
 Marks & Nos. and Description of Goods:
 9150 Tons Wheat
 Signature _______________________
 By Commercial Attache
 Title Embassy of Pakistan
 Dated at Washington, DC 
 26th February 1954." 
Actual payment of the claim by the underwriters was made in July 1954. Accordingly, it appears to us that the underwriters did not acquire an interest legal or equitable in the claim for the damaged cargo until four months after the statute of limitations had run, or at the earliest four days after it had run when the Government of Pakistan signed the Settlement Agreement. If the underwriters had no authority to institute the libel in the name of the Government *32 of Pakistan (absent the clause in the policy) and since they had no interest in the claim at the time, the filing was a nullity and nothing was pending that could be amended and related back under Fed.Rules Civ.Proc. Rule 15(c), 28 U.S. C.A. When the underwriters were in fact subrogated by payment of the claim the statute had run.
We are satisfied that the deletion by the Government of Pakistan of the specific authority to institute suit in its name leaves little doubt that express authority to sue in its name was denied to the insurer. The proffered agreement to the Government of Pakistan is some evidence also that the insurer felt it needed such authority. At most the clause in the policy was an agreement by the insured to bring suit, failing which the insurer could successfully resist payment. Coleman v. New Amsterdam Casualty Company, 247 N.Y. 271, 276, 160 N.E. 367, 72 A.L.R. 1443.
When advised of the deletion and the obvious refusal to authorize suit the underwriters could have refused to pay the claim but they acted otherwise and paid it. Perhaps they were more interested in securing further business than protecting their rights by a lawsuit. They made their choice and must suffer the consequences. The statute of limitations is a complete bar to their claim and respondents are entitled to a decree.
Decree accordingly.