## American Cas. Co. of Reading, Pa., v. Shely.

November 17, 1950.

Chester D. Adams, Judge.

John L. Davis and Stoll, Keenon & Park for appellee.

JUDGE HELM—Affirming.

On April 1, 1947, appellant, American Casualty Company of Reading, Pennsylvania, issued to appellee, R. S. Shely, doing business as the Shely Construction Company, a comprehensive liability insurance policy for the period April 1, 1947 to April 1, 1948. On or about September 28, 1946, appellee, a general contractor, entered into an agreement with the Louisville Gas and Electric Company whereby appellee agreed to construct an underground conduit system on the west side of Sixth Street, between Walnut and Broadway, in Louisville. The construction work was completed about June 1, 1947. On September 12, 1947, during the course of a rain storm, a tree on Sixth Street near Broadway blew over, falling on an automobile and resulting in the death of its driver, Joseph F. Steinmetz, and damage to the automobile.

On February 20, 1948, actions were filed in the Jefferson Circuit Court to recover for the death of the driver, and damage to the automobile. The defendants there were the Louisville Gas and Electric Company, City of Louisville, and appellee. The petitions in each case, filed as exhibits in this case, alleged that the defendants were negligent in causing or allowing roots from the tree located near Sixth and Broadway to be cut while constructing and digging a ditch along the street, thereby causing the tree to be in a weakened and dangerous condition. Upon receiving notice of the accident, appellee gave to appellant due and timely notice, in accordance with the provisions of the insurance policy filed with the petition. Upon receiving notice, appellant referred the defense of the actions in Jefferson County to its legal counsel in Louisville, who proceeded to investigate the case. Louisville counsel for appellant made an investigation beginning February 26, 1948 and continuing off and on until November 21, 1949, the date the suits were settled. They filed demurrers on behalf of appellant on April 23, 1948; filed answers in May, 1948, and attended the taking of depositions on behalf of appellee in August, 1948.

In December, 1948, appellant notified appellee that its policy did not cover this action. On January 31, 1949, appellant gave written notice, by registered mail, to appellee that the suits were not covered under the insurance policy, and that any action theretofore taken or thereafter to be taken by appellant in defense of

the suits was in full reservation of all its rights under the policy. On February 7, 1949, counsel for appellee wrote appellant's counsel stating that since appellant had undertaken the defense of the two law suits without prior notice to appellee of its disclaimer of liability, it was his position that it would be precluded on the grounds of waiver and estoppel from thereafter avoiding liability under the policy.

The two suits were assigned for trial on November 21, 1949. On that date the suits were settled, the parties entering into an agreement reciting their controversy concerning the coverage, as to whether the appellant was estopped to assert noncoverage, and that $2500 advanced by appellant toward settlement of the two suits would not be considered as an admission of coverage or liability under the policy. It was agreed that a final determination as to the rights of the parties would be made by appellant's filing a declaratory judgment action in the Fayette Circuit Court. Accordingly, this action was filed in that court. The action was submitted to the court upon the petition, exhibits, and stipulation of counsel. The court rendered a judgment declaring that appellant's policy covered the accident, and that appellant, by its action in defending the Jefferson Circuit Court suits, is estopped. From that judgment appellant appeals, urging that the accident or occurrence here involved was not covered by the insurance policy in question. Appellant says: "The questions involved are broadly: (1) whether coverage under appellant's insurance policy extended to appellee under the facts and circumstances mentioned in the petition, and (2) whether appellant, by acts and conduct disclosed in the record, has waived the right to assert lack of coverage."

Basically, there is no dispute about the facts of the case. The questions before the court are questions of law. To support its second position, appellant calls our attention to 29 Am.Jur., page 690, section 903, and relies upon a case cited under that section—Washington Nat. Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 854. Craddock, the insured, accidently shot himself through the knee and leg with a pistol. The insurer's policy excepted liability arising from gunshot wounds. After the insured had received his wounds, he mailed the usual report blanks to the insurance com-

pany stating the nature of his injury. The company paid him benefits for 11 weeks before raising any quesiton as to coverage. After the 11 weeks it declined to make further payments. The insured contended that the company, by paying him benefits for an excluded injury during a period of 11 weeks, was estopped from denying liability, and that it had waived the question of coverage. It was held that an accident insurer does not, by paying disability benefits in respect of an injury not within the coverage of the policy, thereby render itself liable to continue to pay such benefits for the full stipulated period, since waiver is ineffectual to extend the coverage of a policy. The Craddock case is annotated in 113 A.L.R. 857.

In 29 Am. Jur., 672, it is said: "The general rule supported by the great weight of authority is that if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. * * *."

In 81 A.L.R. page 1327, in an annotation on insurer's assumption of, or continuation in, defense of action brought against the assured as waiver, or estoppel, as regards defense of noncoverage, it is said: "Stated in broad general terms, a liability insurer by assuming and conducting the defense of an action brought against the assured where with knowledge of facts taking the accident, injury, etc., outside the coverage of the policy,—and without disclaiming liability and giving notice of its reservation of rights,—is thereafter precluded in an action upon the policy from setting up the defense of noncoverage, it is held by the great weight of authority. * * *." Numerous cases are cited in support of this annotation.

In 45 C.J.S., Insurance, sec. 714, page 684, it is said: "Broadly speaking an insurance company which undertakes or continues the defense of an action against insured with knowledge or means of knowledge of grounds for avoiding its liability to insured, and without due notice to insured of its disclaimer of liability, will on principles of waiver and estoppel be precluded

from thereafter avoiding liability under the policy on such grounds, * * *.'' Sec. 8 Appelman, Insurance Law and Practice, sections 4692, 4693 and 4694.

There is a distinction between the type of case on which appellant relies and the case presented here. In the Craddock case, supra, the company paid certain benefits under an accident policy for loss which was not covered by the policy. An estoppel was asserted on account of these payments. But there the person claiming the estoppel was not prejudiced by the action of the company against whom the estoppel was asserted. One of the basic elements of an estoppel is that the person claiming it must have been prejudiced by the action of the person against whom it is asserted. Generally the courts hold that where an insurance company undertakes the defense of an accident case, the loss of the right by the insured to control and manage the case is itself a prejudice.

In Oehme v. Johnson, 181 Minn. 138, 231 N.W. 817, 821, 81 A.L.R. 1308, 1315, it is said: ''If an insured is to pay a part of the recovery which may be had, he should not be deprived of the right to defend in person. He should have the right to interpose his personality. Thus in Fairbanks Canning Co. v. London, etc., 154 Mo.App. 327, 133 S.W. 664, 667, the insurer was bound by its contract to assume the defense though the action was groundless; and by the same contract the insured surrendered the right to control the conduct of the action though a person vitally interested. The insured lost something, and the court referring to it said: 'If a man is to bear the burden of the result of a defense to an action, it. is his privilege to have his own personality appear in its course. He is entitled to have the results measured up to him, and not to some other. * * * The loss of a right to control and manage one's own case is itself a prejudice.' ''

Here appellant had control of the investigation and defense and did not raise any question as to non-coverage or make any reservation of rights for almost a year. Under all the facts and circumstances of this case, we believe the trial court reached the correct conclusion as to appellant's second position. We do not reach its first contention.

The judgment is affirmed.